**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DAEMON N. FORD,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN LEON HILL,<br><br>Respondent. | CASE NO. 5:21-CV-01618<br><br>JUDGE SARA LIOI<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**REPORT & RECOMMENDATION** |

Petitioner Daemon N. Ford ("Petitioner" or "Mr. Ford") brings this habeas corpus action pursuant to 28 U.S.C. § 2254. (ECF Doc. 1 ("Petition").) Mr. Ford filed his Petition on August 4, 2021.[1] (*Id.*) His Petition relates to his convictions for multiple drug offenses and having weapons under disability and his eight-year prison sentence in Stark County Common Pleas Case No. 2014CR1993(A), following a guilty plea. (ECF Doc. 1; ECF Doc. 13-1, pp. 50-53.) The matter is fully briefed. (ECF Docs. 13 & 16.)

This matter was assigned to the undersigned Magistrate Judge pursuant to Local Rule 72.2. For the reasons set forth herein, the undersigned recommends that the Court **DISMISS** Ground One as barred by the statute of limitations and **DENY** Ground Two on the merits.

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)). The Petition was docketed on August 20, 2021. (ECF Doc. 1.) Mr. Ford was incarcerated when he filed his Petition. He has since been released (ECF Doc. 20), but he is subject to post-release control and other collateral consequences (ECF Doc. 13-1, pp. 86-89). Accordingly, Mr. Ford's release from prison did not moot his Petition. *See Carafas v. LaVallee*, 391 U.S. 234, 237–39 (1968); *Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998).

## I. Procedural Background

### A. State Court Conviction

On December 12, 2014, a Stark County Grand Jury indicted Mr. Ford on nineteen offenses, including drug possession, drug trafficking, conspiracy, engaging in a pattern of corrupt activity, and having weapons under disability, charges that stemmed from a 126-count indictment with multiple co-defendants. (ECF Doc. 13-1, pp. 4-38, 200; *see also id.* at pp. 40-47 (amendments to indictment).) On February 27, 2015, Mr. Ford pled guilty to Count 1 (engaging in a pattern of corrupt activity), Count 2 (conspiracy trafficking in heroin), Count 3 (conspiracy trafficking in cocaine), Count 8 (trafficking in heroin), Count 9 (trafficking in heroin with forfeiture specification), Counts 14 and 15 (possession of heroin), Counts 111 and 112 (trafficking in cocaine), Counts 113 and 114 (possession of cocaine), and Count 126 (having weapons while under disability). (ECF Doc. 13-1, pp. 50, 57-66.) He signed a Plea of Guilty Criminal Rule 11(C) form ("guilty plea form") on that date (*id.* at pp. 57-66), which included an acknowledgement that by entering a plea of guilty, he understood he was giving up his right to a trial by a jury or to the court, the right to confront witnesses, the right to have compulsory process for obtaining witnesses in his favor, right to require the State to prove his guilt beyond a reasonable doubt, and right not to be compelled to testify against himself (*id.* at p. 64).[2] In the guilty plea form, Mr. Ford further acknowledged and stated:

---

[2] Mr. Ford asserts that the February 27, 2015 plea form was not journalized and refers to it as "[t]he invalid plea form" and/or "the non-journalized plea form." (ECF Doc. 16, pp. 2-4.) However, he does not contend that the plea form was not signed by him. Mr. Ford also asserts that he filed a motion to compel Respondent to provide "the original February 27, 2015 change of plea/sentence imposed entry . . . [and] the Respondent failed to correct its error and did not provide the original February 27, 2015 judgment entry with its attached plea form." (*Id.* at p. 3, n. 2.) On July 28, 2022, the Court granted "Petitioner's motion to compel production of the February 27, 2015 'sentencing form . . . addressing incarceration and convey." (ECF Doc. 18, p. 9.) On August 25, 2022, Respondent filed the February 27, 2015 Journal Entry Sentencing Form. (ECF Doc. 19, p. 1; ECF Doc. 19-1, pp. 1-7.) This filing sufficiently complied with the Court's July 28, 2022, Order which required Respondent "to provide a copy of the sentencing form referenced on the February 27, 2015 docket entry for the underlying state court case on or before August 29, 2022." (ECF Doc. 18, p. 9.)

- No threats or promises have been made to me by anyone to secure my Plea of Guilty;
- I acknowledge that I am pleading guilty freely and voluntarily;
- I further acknowledge that I understand the nature of the charges and the maximum penalties involved upon conviction;
- I have complete confidence in my lawyer and acknowledge that she has effectively and diligently represented me;
- It is solely my own choice to enter a Plea of Guilty with full knowledge of the other alternatives available to me; and
- I understand my right to appeal a maximum sentence and procedural issues regarding this plea; I understand my other limited appellate rights which have been explained to me by the Court, and that any appeal must be filed within 30 days of my sentence. I also understand that in certain circumstances the State may appeal my sentence. I understand the consequences of a conviction upon me if I am not a U.S. Citizen.

(*Id*. at pp. 65-66.) Mr. Ford was present with his counsel at the plea and sentencing hearing held on that same date. (ECF Doc. 13-2, pp. 4-23.) At that hearing, the trial court confirmed with Mr. Ford that he signed the guilty plea form and that he intended to plead guilty to the charges identified on the form. (*Id*. at pp. 7-8.) Based on Mr. Ford's representations regarding his intent to plead guilty as indicated, the trial court sustained the prosecutor's motion to dismiss all major drug specifications which were encompassed in Counts 4, 5, 6, 7, 10, 12, and 13. (*Id.* at p. 8.) The trial court also confirmed that Mr. Ford read and understood the plea form and had the opportunity to discuss the form with his counsel. (*Id*. at p. 9.)

Thereafter, the trial court sentenced Mr. Ford as follows: eight years in prison for each of Counts 1, 2, 8, 9, 14, 15, 112, and 114; 36 months in prison for each of Counts 3 and 126; and 12 months in prison for each of Counts 111 and 113.[3] (*Id*. at pp. 51-53, 69-73; *see also* ECF Doc.

[3] The 36-month sentence for Count 3 was imposed during a resentencing on April 14, 2015. (ECF Doc. 13-1, pp. 52, 69; ECF Doc. 13-2, pp. 27-33.) Count 3 had been amended from a first-degree felony to a third-degree felony,

13-2.) All sentences were to be served concurrently for an aggregate prison term of eight years. (ECF Doc. 13-1, p. 53.) The Change of Plea and Sentence Imposed Judgment Entry was entered on April 28, 2015.[4] (*Id*. at p. 48.) Mr. Ford did not file a timely direct appeal.

**B. Motion to Withdraw Guilty Plea**

Over three years later, on November 13, 2018, Mr. Ford filed a pro se motion to withdraw his guilty plea,[5] asserting the following arguments:

1. A defendant has a constitutional right to effective counsel.[6]
2. The defendant's guilty plea was involuntary and unintelligent.[7]
3. The trial court committed plain error in relation to the two counts of conspiracy.[8]
4. The defendant's plea is involuntary for the trial court convicted him to possessing and trafficking in heroin and cocaine and of the conspiracies to commit those specific offenses.

(ECF Doc. 13-1, pp. 93-111.) On January 18, 2019, the trial court denied Mr. Ford's motion to withdraw his guilty plea. (*Id*. at pp. 112-18.) Thereafter, on February 15, 2019, Mr. Ford filed a pro se notice of appeal from the trial court's denial of his motion to withdraw his guilty plea. (*Id*. at pp. 119-20.) Mr. Ford raised three assignments of error in his appellate brief, which he

---

but the trial court had initially sentenced Mr. Ford to eight years as a first-degree felony. (ECF Doc. 13-2, pp. 29-30.) At the resentencing, the sentence for Count 3 was corrected to thirty-six months. (*Id*. at p. 30.)

[4] On April 28, 2015, the trial court also entered a nolle prosequi entry on the major drug offender specifications. (ECF Doc. 13-1, pp. 67-68.)

[5] Mr. Ford states that his grounds for relief in his Petition do not relate to claims raised in his motion to withdraw his guilty plea. (ECF Doc. 16, p. 4.) The undersigned concurs with this assessment.

[6] Mr. Ford argued specifically that trial counsel failed to conduct a proper investigation. (*Id*. at pp. 95-96.)

[7] Mr. Ford argued specifically that he was denied effective assistance of counsel because his counsel advised him to plead guilty to drug trafficking and possession charges despite the lack of lab reports to support the prosecution's case. (*Id*. at pp. 96-99.) Because of this, he argued that his plea was not voluntary or knowing. (*Id*.)

[8] Mr. Ford argued that he was convicted of multiple conspiracies, resulting "in a manifest injustice and possible double jeopardy violation that must not stand making his plea involuntary." (*Id*. at p. 101.)

filed on April 5, 2019. (*Id*. at pp. 121-73.) The State filed its brief in opposition on May 15, 2019. (*Id*. at pp. 174-98.) On July 23, 2019, the Fifth District Court of Appeals affirmed the trial court's denial of Mr. Ford's motion to withdraw his guilty plea. (*Id*. at pp. 199-204.) In its opinion affirming the trial court's denial of that motion, the court of appeals found that the assignments of error regarding sentencing were "barred by res judicata because [Mr. Ford] failed to assert [the] errors in direct appeal." (*Id*. at p. 202.)

On October 29, 2019, Mr. Ford filed a pro se notice of appeal (ECF Doc. 13-1, pp. 205-06) and motion for leave to file a delayed appeal (*id*. at pp. 207-19) with the Supreme Court of Ohio (Case No. 2019-1479). Mr. Ford's motion for delayed appeal was granted on December 31, 2019, and he was ordered to file a memorandum in support of jurisdiction. (*Id*. at p. 220.) Mr. Ford filed the memorandum on January 27, 2020 (*id*. at pp. 221-44) and the State filed a memorandum in response to jurisdiction on February 26, 2020 (*id*. at p. 318). On April 14, 2020, the Supreme Court of Ohio declined to accept jurisdiction. (*Id*. at p. 255.)

**C. Motion for Leave to File Delayed Appeal**

On November 17, 2020, Mr. Ford filed a pro se notice of appeal (ECF Doc. 13-1, pp. 256-57) and motion for leave to file delayed appeal (*id*. at pp. 258-67) with the Fifth District Court of Appeals, seeking to appeal the judgment entry of conviction entered by the trial court on April 28, 2015. Mr. Ford explained that he did not file a timely appeal because "[t]he appointed counsel informed [him] that since he pled guilty, he had no right to appeal" and "[t]he trial court failed to orally advise him of his right to appeal pursuant to Crim. R. 32(B) and the judgment entry was absence [sic] to any notification of those appellate rights." (*Id*. at p. 263.) He argued that he was diligent in pursuing his rights because he researched his case after his sentence and learned that his trial counsel: had not properly investigated the case and evidence

before advising him to enter guilty pleas; and had failed to object to the trial court's failure to follow mandatory statutory sentencing provisions. (*Id.*) More specifically, he explained that he "discovered his appellant rights" after the court of appeals affirmed the trial court's denial of his motion to withdraw his guilty plea on July 23, 2019, "during his visit in the prison library by an inmate legal clerk." (*Id.* at p. 264.) After he "obtained his transcripts," he said he "discovered the trial court failed to orally advise him of his right to appeal" and his "right to have assistance of appointed counsel for that appeal." (*Id.* at pp. 264-65.)

Mr. Ford provided an affidavit in support of his motion for delayed appeal, which set forth the proposed assignments of error he said he would have raised in his appeal. (ECF Doc. 13-1, p. 267; ECF Doc. 19-1, pp. 6-7.) Those proposed assignments of error were:

1. The trial court failed to follow mandatory sentencing provisions pursuant to R.C. 2941.25(A) and *State v. Cabrales*, 118 Ohio St.3d 54.
2. The Appellant received ineffective assistance of counsel when counsel failed to object to the indictment for failure to state a cognizable offense.
3. The trial court failed to follow the mandatory sentencing provisions provided in R.C. 2923.01(F) and (G).
4. And other assignments of error that may be raised by the appointment of counsel.

(ECF Doc. 19-1, p. 7.) The State did not file a response and the court of appeals denied the motion on December 22, 2020. (ECF Doc. 13-1, p. 268-69.)

On January 13, 2021, Mr. Ford filed a motion to certify a conflict in the Fifth District Court of Appeals, asserting that the court's December 22, 2020 judgment entry created a conflict with judgments from three other courts of appeal. (ECF Doc 13-1, pp. 270-75.)

On February 5, 2021, Mr. Ford filed with the Supreme Court of Ohio (Case No. 2021-0171): (1) a notice of appeal from the court of appeals' December 22, 2020 judgment entry denying his motion for leave to file a delayed appeal (ECF Doc. 13-1, pp. 278-79); (2) a

memorandum in support of jurisdiction (*id*. at pp. 280-98); and (3) a notice that a motion to certify a conflict was pending in the Fifth District Court of Appeals and a request that the Supreme Court of Ohio stay consideration of the jurisdictional memorandum until the Fifth District Court of Appeals determined whether to certify a conflict (*id*. at pp. 299-301). In his memorandum in support of jurisdiction, Mr. Ford raised the following two propositions of law:

> 1. The Defendant received ineffective assistance of counsel when counsel informed him that he did not have a right to appeal after he pled guilty.
>
> 2. The Fifth District abused its discretion when it denied the Appellant's motion for leave to file a delayed appeal based upon the trial court failure to advise him of his appellate rights violating the due process and equal protection clause of the 14th Amendment of the U.S. Constitution.

(*Id*. at pp. 281, 287-94.) On March 2, 2021, the State filed a Waiver of Memorandum. (ECF Doc. 9-1.) The State subsequently filed a memorandum in response to jurisdiction on March 8, 2021. (*Id*. at pp. 245-54.)

On March 11, 2021, the Fifth District Court of Appeals denied Mr. Ford's motion to certify a conflict on the basis that it was not timely filed. (ECF Doc. 13-1, pp. 276-77.) On March 29, 2021, Mr. Ford filed a notice with the Supreme Court of Ohio that the court of appeals had denied his motion to certify a conflict. (*Id*. at pp. 302-05.) Mr. Ford also filed a motion to strike the State's memorandum in response to jurisdiction. (*Id*. at p. 323.) On April 27, 2021, the Supreme Court of Ohio declined to accept jurisdiction of Mr. Ford's appeal and denied Mr. Ford's motion to strike. (*Id*. at p. 306.)

## D. Federal Habeas Corpus Petition

Mr. Ford raises the following two grounds for relief in his present Petition:

> **GROUND ONE**: The petitioner received ineffective assistance of counsel when counsel informed him that he no rights to appeal after he plead guilty in violation of 6th and 14th Amendment.

**Supporting Facts**: On February 27, 2015, indigent defendant Daemon Ford (hereinafter the Petitioner) and appointed counsel (hereinafter Atty. Murphy) entered into a plea of guilty to eleven drug and one weapon charges. On the same day, the trial court conducted a sentencing hearing with Petitioner and appointed counsel present. The trial court imposed a mandatory (8) eight-year prison term for each the following count(s) 1, 2, 3, 8, 9, 14, 15, 112, and 114. The trial court also imposed (3) three-year prison for count 126, and (12) twelve months for each count 111 and 113. The trial court ordered all prison terms to run concurrently for an aggregated mandatory (8) eight-year prison sentence.

The trial court did not advise Petitioner of the appellate rights during sentencing as required by Crim.R.32(B). Atty. Murphy failed to mention anything about his appellate rights after the February 27, 2015 sentencing hearing.

On April 14, 2015, the trial court sua sponte held a new sentencing hearing because the trial court erred by imposing a mandatory (8) eight-year prison term to Count 3: conspiracy to trafficking in cocaine, F-3 and imposed a (3) three-year prison term for Count 3. The trial court re-imposed the original prison terms for all other counts. The trial court again ordered all prison terms to run concurrently for an aggregated mandatory (8) eight-year prison sentence.

Again the trial court did not advise the Petitioner of his rights to appeal during the resentencing hearing. Atty. Murphy informed Petitioner because Petitioner pled guilty he had no right to appeal and did not advise him of the appointment appellate counsel in aid of that appeal.

On or about August 20, 2020, the Petitioner obtained the February 27, 2015 plea and sentencing transcripts and April 14, 2015 re-sentencing hearing transcript visited the prison law library.  An inmate law clerk (Macksyn) assisted in the review of his transcripts discovered that the trial court did not inform him of his right to appeal.  Moreover, he received ineffective assistance of counsel when Atty. Murphy informed him that he had no right to appeal.

On November 14, 2020, the Petitioner filed a notice of appeal, motion for leave to file a delayed appeal, motion for appointment of appellate counsel, sworn affidavit and affidavit of indigence.  In the motion to leave to file a delayed appeal, the Appellant asserted that his defendant counsel was ineffective by advising him that he could not appeal his sentence or the procedures of the plea and the trial court failed to inform him of all his appellate rights during the sentencing hearing.  The prosecution did not oppose the motion and remained silent on the record.

On December 22, 2020, the Fifth District Court of Appeals denied the Petitioner's motion for leave to file delayed appeal.  The appointed counsel's erroneous advisement notifying the Petitioner that he had no appellate rights, including the failure to inform him of the appointment of appellate counsel to aid in that appeal was prejudicial. The Petitioner received ineffective assistance of counsel when

Atty. Murphy advise him that he could not file a direct appeal with the aid of appellate counsel. The information provided by Atty. Murphy falls below the reasonable professional standards under the 6th Amendment and this District Court's ruling in *Thompson v. Wilson*, 523 F. Supp. 2d 626 (N.D. Ohio 2007).

In *Thompson*, the Petitioner raised his second ground that he was denied effective assistance of counsel as provided for by the 6th Amendment when trial counsel "never fully explained[his] rights. Counsel did not mention anything about [his] right to appeal anything or under what conditions [he] could appeal." The Court found that a defendant has a right to effective assistance of counsel in connection with defendant's first appeal of right. *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002); *Strickland v. Washington*, 466 U.S. at *689; *Thompson* supra at *639-40.

This Court followed the Strickland two-part test, the first issue is whether the counsel's failure to advise Thompson of his appellate rights falls below the "objective standards reasonableness." In Ohio a defendant who plead guilty to a felony may appeal as a matter of right the sentence imposed. R.C.2958.08(A). The Court determined that the counsel's failure to advise Thompson of his fundamental right was outside the scope of reasonable professional representation. *Id.* at *640.

Here, the Petitioner pled guilty to multiple felonies, however, Atty. Murphy did not inform the Petitioner of his right to appeal at the February 24, 2015 sentencing hearing or his could request counsel in that appeal. Additionally, at the April 14, 2015 re-sentencing hearing, Atty. Murphy prejudicially advise the Petitioner that because "he pled guilty to the felonies he had no right to appeal," but for this deficiency of Atty. Murphy, the Petitioner would have filed a timely appeal with appointment of counsel.

Second issue, the Court found that the merits of Thompson's appeal were not reached because of the failure of counsel to advise him of his right to appeal, and the failure of trial court to advise him of his right to appellate counsel. *Id*. at *640.0

Here, the merits of the Petitioner were not reached because Atty. Murphy erroneous notification that Petitioner could not appeal and failed to advise him of all his appellate rights, including the right to appellate counsel. The Petitioner received ineffective assistance of counsel when counsel failed to properly advise him of his right to appeal with aid of appointed appellate counsel in violation of the 6th Amendment. Wherefore, the Petitioner should be allowed to have his appeal as of right restored with aid of appellate counsel.

**GROUND TWO**: The Petitioner was denied due process and equal protection when the Fifth District Court of Appeals denied his motion for leave to file a delayed appeal and failed to appoint counsel in violation of the 14th Amendment.

**Supporting Facts**: On April 14, 2015, the trial court conducted a re-sentencing hearing to correct its previously imposed illegal prison term of mandatory (8) eight-year prison term to Count 3: conspiracy to trafficking in cocaine, F-3. The trial court imposed a new prison term for a maximum (3) three- year prison term to Count 3 and re-imposed the original sentences for the remaining counts. The trial court imposition of maximum prison terms for several counts triggered a notification requirement of appellate rights to the Petitioner pursuant R.C.2953.08. However, the trial court failed to advise the Petitioner of his rights for the appeal including his right for appointment to appellate counsel in the aid of that appeal as required by Crim.R.32(B).

"There is no right to appeal, while this is true.  Once the state grants the right to appeal it must follow procedures comporting with the Fourteenth Amendment, *Evitts v. Lucey*, 496 U.S. 387, 403, 83 L.Ed. 2d 821, 105 S.Ct. 830 (1985).  After deciding that a right to appeal is essential, the state cannot then deny a defendant due process.  Due process is implicated when a defendant is denied an adequate opportunity to present his claim and receive an adjudication on the merits, or when defendants are treated differently in such a way that the affects their ability to pursue a meaningful appeal.  *Id.* at 402-405.  Ohio has granted all defendants the right to appeal following a criminal conviction, and as a result must comfort its procedures to the standards of due process.  CrimR.32(B)."  *Wolfe v. Randle*, 267 F. Supp. 2d at *746.

Here, the Petitioner obtained a certified copy of April 14, 2015 re-sentencing hearing transcript on August 20, 2020. The Petitioner went to the prison law library, a prison law clerk assisted him in reviewing the transcript and discovered that the trial court did not advise him of his appellate rights.

On November 14, 2020, the Petitioner filed a motion for leave to file a delayed appeal as required by App.R.5 and provided a full certified copy of the April 14, 2015 re-sentencing transcript. The Petitioner also included an affidavit of indigence, a motion for appointment of counsel for his appeal as of right, and motion for complete transcripts at State's expense. In his requesting for the delayed appeal, the Petitioner asserted that the trial court and his appointed counsel failed to advise him of his appellate rights which was cause for the delayed in filing the appeal. The Petitioner also submitted proposed assignments of error in the attached sworn affidavit.

On December 22, 2020, the Fifth District Court of Appeals denied the Petitioner's motion for leave to file a delayed appeal. The state did not file a motion of opposition against the Petitioner's request for delayed appeal. However, the appellate court acted arbitrarily, did not review the entire record and summarily dismissed the motion.

When the Petitioner file the motion for leave to file a delayed appeal, the delayed was attributed to the trial court failure to give oral notification of the appellate

> rights. The Fifth District Court of Appeal was in the best position to correct the Fourteenth Amendment due process right error created by the trial court by granting his motion for leave to file a delayed appeal, but failed to do so. The Fifth District denied the Petitioner's motion for leave to file a delayed appeal creating a violation of the due process and equal protection rights under the 14th Amendment. by refusing to correct the trial court's error.

(ECF Doc. 1 pp. 5-7; ECF Doc 1-3, pp. 1-5.)

## II. Law & Analysis

Respondent argues that Mr. Ford's Petition should be dismissed or denied for several reasons. First, Respondent argues that Mr. Ford's Petition should be dismissed as untimely under 28 U.S.C. § 2244(d)(1)(A), which starts the running of AEDPA's statute of limitations from the date on which the judgment becomes final by the conclusion of direct review or expiration of time for seeking such review. (ECF Doc. 13, pp. 10-16.) Second, Respondent argues that Mr. Ford's Petition should be dismissed because he procedurally defaulted both grounds for relief by failing to comply with state procedural rules for timely filing direct and discretionary collateral appeals with the state court of appeals and state supreme court. (*Id*. at pp. 16-26.) Third, Respondent argues that, even if the Petition is not subject to dismissal based on untimeliness or procedural default, Mr. Ford's Petition should be denied because Ground Two presents a state law claim which is not cognizable on federal habeas review and Ground One and Ground Two are without merit. (*Id*. at pp. 26-33.)

In response, Mr. Ford argues that his Petition is timely under 28 U.S.C. § 2244(d)(1)(D) because he filed it within one-year from the date on which the factual predicate of his claims could have been discovered through the exercise of due diligence, which he asserts was December 22, 2020—the date the state court of appeals denied his motion for leave to file a delayed appeal. (ECF Doc. 16, pp. 7-14.) As to Respondent's procedural default arguments, Mr. Ford asserts that Respondent waived the ability to raise procedural default as a defense because

Respondent did not file a response to his motion for leave to file a delayed appeal and filed a waiver of memorandum in response to his memorandum in support of jurisdiction in connection with his appeal to the Supreme Court of Ohio from the court of appeals' denial of the motion for leave to file a delayed appeal. (*Id*. at 14-15.) Alternately, he argues that each of his two grounds for relief was fairly presented to the state courts and/or cause and prejudice exists to excuse any procedural defaults. (*Id*. at pp. 15-24.) Finally, Mr. Ford argues that Grounds One and Two are meritorious. (*Id*. at pp. 24-32.)

For the reasons set forth in further detail below, the undersigned concludes that Mr. Ford's first ground for relief is barred by the statute of limitations. The undersigned further concludes that Mr. Ford's second ground for relief is not barred by the statute of limitations, but that it should be denied as not cognizable on federal habeas review to the extent Mr. Ford attempts to raise a challenge based on state law and denied on the merits to the extent that Mr. Ford attempts to raise a federal constitutional challenge. Accordingly, the undersigned will not address Respondent's alternative procedural default arguments.[9] Instead, the undersigned recommends that the Court **DISMISS** Ground One as barred by the statute of limitations and **DENY** Ground Two on the merits.

**A. Standard of Review Under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to

[9] *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (observing that 28 U.S.C. § 2254(b)(2) "permit[s] a federal court to deny a habeas petition on the merits notwithstanding the applicant's failure to exhaust state remedies").

grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Id.* (citing 28 U.S.C. §§ 2254(a), (b), (c)). Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application "shall not be granted unless the adjudication of the claim"

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *See Cullen*, 563 U.S. at 181.

**B.      AEDPA Statute of Limitations**

28 U.S.C. § 2244 limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus, providing in relevant part:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of --
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d). AEDPA's statutory tolling provision provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). Thus, under section 2244(d)(2), the statute of limitations is tolled for as long as a properly filed application for post-conviction relief or other collateral review is pending in the state courts. *See Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003). This statutory tolling continues "until the application has achieved final resolution through the State's post-conviction procedures," *Carey v. Saffold*, 536 U.S. 214, 220 (2002), and further "until the expiration of the period for further State court review, whether or not the petitioner actually seeks such review," *Holbrook v. Curtin*, 833 F.3d 612, 615 (6th Cir. 2016) (internal quotations omitted).

Section 2244(d)(2) does not toll the limitations period during the filing of a subsequent petition for certiorari to the United States Supreme Court because such a petition is federal and therefore "not a part of a 'State's post-conviction procedures.'" *Lawrence v. Fla.*, 549 U.S. 327, 337 (2007) (quoting 28 U.S.C. § 2244(d)(2)). In addition, the tolling provision does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003) (internal quotations and citation omitted). Thus, once the limitations period has expired, a "collateral petition[] can no longer serve to avoid a statute of limitations." *Id.*

In addition to statutory tolling, the AEDPA statute of limitations may be equitably tolled in appropriate circumstances. The Supreme Court has explained that this defense "is not jurisdictional" and "does not set forth an inflexible rule requiring dismissal whenever its clock has run." *Holland v. Fla.*, 560 U.S. 631, 649 (2010) (internal quotations omitted). Equitable tolling allows federal courts to excuse the statute of limitations bar where tolling is appropriate to "relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules." *Holland*, 560 U.S. at 650 (internal quotations omitted). There are generally two forms of equitable tolling available in this context, traditional equitable tolling and tolling based on "actual innocence."

To support traditional equitable tolling, a petitioner must show that: (1) "he has been pursuing his rights diligently"; and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (internal citations and quotations omitted); *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011). Tolling is evaluated on a case-by-case basis and must be "applied sparingly," with the petitioner retaining the "ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011) (internal quotations and citations omitted). "[*P*]*ro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse . . . late filing." *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012); *see also Hall*, 662 F.3d at 750–752 (lack of transcript, pro se status and limited law library access did not warrant equitable tolling); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (finding "lack of legal training, [a petitioner's] poor education, or even [a petitioner's] illiteracy" are not reasons to toll the statute of limitations).

A petitioner "may also be eligible for equitable tolling if he demonstrates actual innocence, so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice." *Patterson v. Lafler*, 455 Fed. Appx. 606, 609 (6th Cir. 2012) (citing *Murray v. Carrier,* 477 U.S. 478, 495–96 (1986)). "A valid claim of actual innocence requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* (quoting *Schlup v. Delo,* 513 U.S. 298, 324 (1995)). "The evidence must demonstrate factual innocence, not mere legal insufficiency." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

Respondent contends that Mr. Ford's Petition is not timely, even taking into account statutory tolling, because his Petition was not filed within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," *see* 28 U.S.C. § 2244(d)(1)(A). (ECF Doc. 13, pp. 10-16.)

Mr. Ford challenges Respondent's argument that equitable tolling should not apply to extend the statute of limitations period under §2244(d)(1)(A). (ECF Doc. 16, pp. 11-14.) Further, Mr. Ford argues that a different date should apply for starting the running of the one-year limitation period. He relies on 28 U.S.C. §2244(d)(1)(D) which provides that "[t]he limitation shall run from . . . the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."[10] (ECF Doc. 1, p.

[10] Mr. Ford also cites to §2244(d)(1)(B) as a basis upon which to find his Petition timely. However, he fails to expound on that argument in his Petition or Traverse. This argument has not been considered because, while Petitioner is pro se, it is not this Court's role to develop his arguments. *See Hartwell v. United States*, No. 04-40023, 2005 WL 3478380, at *7 (E.D. Mich. Dec. 20, 2005) ("It is not this Court's job to scour the record for information and evidence that could potentially corroborate and support Petitioner's argument.") (citing *United States v. Phibbs*, 999 F.2d 1053, 1080, n. 12 (6th Cir. 1993), "noting that 'it is not our function to craft [a party's] arguments'"); *see also Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) ("[l]iberal construction does not require a court to conjure allegations on a litigant's behalf") (quoting *Erwin v. Edwards*, 22 F.App'x 579, 580 (6th Cir. 2001)).

14; ECF Doc. 16, pp. 7-11.) At a minimum, he argues the Court should consider Ground Two timely under §2244(d)(1)(D) because the AEDPA clock did not start to run until December 22, 2020, when the Fifth District Court of Appeals denied his motion for leave to file a delayed appeal, and his Petition was filed within one year of that date, on August 4, 2021. (ECF Doc. 16, pp. 7-11.)

For the reasons explained below, the undersigned finds that the Petition is untimely under §2244(d)(1)(A) but that Ground Two is timely under §2244(d)(1)(D).

### C. The Petition is Untimely Under §2244(d)(1)(A)

Respondent contends that the Petition is not timely because it was not filed within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" under 28 U.S.C. §2244(d)(1)(A). (ECF Doc. 13, pp. 10-16.) Mr. Ford's sentence was entered on April 28, 2015, following his change of plea and resentencing. (ECF Doc. 13-1, pp. 48-66.) He then had thirty days to file a notice of appeal from that entry, *see* Ohio App. R. 4(A)(1), but did not do so. His conviction became final when the time to file his direct appeal expired, on May 28, 2015. The one-year statute of limitations under §2244(d)(1)(A) therefore started to run on May 29, 2015, and expired on May 28, 2016. Mr. Ford did not file this Petition until more than six years later, on August 4, 2021. Because the Petition was not filed until after the limitations period had expired, it is time-barred under §2244(d)(1)(A) unless the statute of limitations was tolled through statutory or equitable tolling.

Statutory tolling—which tolls the limitations period while properly-filed applications for post-conviction relief or other collateral review are pending in the state courts—does not apply in this case. 28 U.S.C. § 2244(d)(2). Although Mr. Ford did file a motion to withdraw his guilty plea on November 13, 2018 (ECF Doc. 13-1, p. 93) and motion for leave to file a delayed appeal

on November 17, 2020 (*id*. at p. 258), statutory tolling does not "revive the limitations period (i.e., restart the clock at zero)," and "can only serve to pause a clock that has not yet fully run." *Vroman,* 346 F.3d at 602. Because Mr. Ford's applications were filed *after* the §2244(d)(1)(A) statute of limitations had expired—on May 28, 2016—statutory tolling does not apply.

As to equitable tolling, the undersigned further concludes that equitable tolling does not apply because Mr. Ford has not shown that "he has been pursuing his rights diligently" while "some extraordinary circumstance stood in his way and prevented timely filing," *Holland*, 560 U.S. at 649 (internal citations and quotations omitted), and has not "demonstrate[d] actual innocence, so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice," *Patterson*, 455 Fed. App'x. at 606.[11]

Mr. Ford does not offer a clear argument as to how he "diligently" pursued his rights or what "extraordinary circumstance" stood in the way of timely filing. For example, he highlights his November 2020 motion for leave to file a delayed appeal but does not explain what diligent efforts he undertook prior to filing that motion or what extraordinary circumstances prevented him from acting sooner. (ECF Doc. 16, pp. 10-14.) In his Petition, he asserts that the trial court failed to advise him of his appellate rights at his sentencing hearings in February and April of 2015, and that his appointed attorney told him in April 2015 that "he had no right to appeal" and failed to advise him regarding his right to appointed counsel to aid in an appeal. (ECF Doc. 1-3, p. 1.) In his 2020 motion, Mr. Ford asserted that he "discovered his appellant rights" after the court of appeals affirmed the denial of his motion to withdraw his guilty plea on July 23, 2019, "during his visit in the prison library by an inmate legal clerk," and that he "obtained his transcripts" from which he "discovered the trial court failed to orally advise him of his right to

[11] Mr. Ford focuses his statute of limitations arguments largely on his contention that Ground Two, at a minimum, is timely under §2244(d)(1)(D). That argument is addressed in section II.D., *infra.*

appeal" and his "right to have assistance of appointed counsel for that appeal." (ECF Doc. 13-1, pp. 264-65.) He makes similar arguments in his Petition, asserting that he obtained the relevant transcripts on or about August 20, 2020, and that an inmate law clerk then assisted him in reviewing the transcripts and discovering that the trial court did not inform him of his right to appeal. (ECF Doc. 1-3, pp. 1-2.)

While Mr. Ford has provided some explanation for his failure to timely file a direct appeal by May 28, 2015—i.e., that his trial counsel told him he had no right to appeal and the trial court failed to orally advise him of his right to appeal—neither his Petition nor the Traverse explain specifically what diligent actions and/or extraordinary circumstances led to the five-year delay between his sentencing in 2015 and his discovery of his appellate rights following the review of transcripts with an inmate legal clerk in August 2020. He fails to explain why the prison library, inmate law clerk, or transcripts were unavailable to him prior to August 2020. Absent proof of his diligence and/or impediments prior to August 2020, the undersigned finds Mr. Ford has failed to demonstrate that he was diligent in pursuing his rights or that an extraordinary circumstance prevented timely filing of his Petition. *See Holland*, 560 U.S. at 649.

It is further observed that Mr. Ford acknowledged in his signed guilty plea form:

- No threats or promises have been made to me by anyone to secure my Plea of Guilty;
- I acknowledge that I am pleading guilty freely and voluntarily;
- I further acknowledge that I understand the nature of the charges and the maximum penalties involved upon conviction;
- I have complete confidence in my lawyer and acknowledge that she has effectively and diligently represented me;
- It is solely my own choice to enter a Plea of Guilty with full knowledge of the other alternatives available to me; and

- I understand my right to appeal a maximum sentence and procedural issues regarding this plea; I understand my other limited appellate rights which have been explained to me by the Court, and that any appeal must be filed within 30 days of my sentence. I also understand that in certain circumstances the State may appeal my sentence. I understand the consequences of a conviction upon me if I am not a U.S. Citizen.

(ECF Doc. 13-1, pp. 65-66 (emphasis added).) He was present with his counsel at the plea and sentencing hearing on the date he signed the plea form. (ECF Doc. 13-2, pp. 4-23.) At that hearing, he confirmed to the trial court that: (1) the signature on the guilty plea form was his; and (2) it was his intent to plead guilty to the charges identified on that form. (*Id.* at pp. 7-8.) Mr. Ford also confirmed to the trial court that he had read and understood the plea form and had the opportunity to discuss the form with his counsel. (*Id.* at p. 9.)

While Mr. Ford asserts that he was later told by trial counsel that he had no right to appeal (ECF Doc. 1-2, ECF Doc. 16, pp. 7, 9), and claims that the plea form is invalid and was not journalized (*id.* at pp. 3-4), there is no dispute that he signed the guilty plea form.[12] His signed acknowledgement of his right to appeal, and that any appeal must be filed within 30 days of his sentence, further weigh against the application of equitable tolling in this case. *See e.g.*, *Duett v. Warden, Noble Corr. Inst.*, No. 1:19-CV-725, 2020 WL 4933892, at *3 (S.D. Ohio Aug. 24, 2020) (finding equitable tolling unwarranted where petitioner acknowledged his appellate rights and the need to file an appeal within thirty days of his sentence in writing).

It is also evident that Mr. Ford has failed to show "actual innocence" to support an alternative basis for equitable tolling. *See Patterson*, 455 Fed. App'x. at 606. Mr. Ford's tolling arguments focus on legal standards for sentencing in the context of multiple offenses, not the factual or evidentiary grounds for his convictions, and he does not identify "new reliable

[12] The re-sentencing hearing on April 14, 2015, also did not rescind or void Mr. Ford's plea agreement or his acknowledgements therein. The re-sentencing merely corrected the sentence imposed on Count Three to match its amendment from a first-degree felony to a third-degree felony. (ECF Doc. 13-1, p. 52; ECF Doc. 13-2, pp. 29-30.)

evidence" demonstrating that he was factually innocent of the underlying charges, *id.* at 606. (ECF Doc. 16, pp. 11-14.) Indeed, Mr. Ford pled guilty all charges of which he was convicted and sentenced. (*See* ECF Doc. 13-1, pp. 65-66; ECF Doc. 13-2, pp. 4-23.)

For the reasons stated above, to the extent that the statute of limitations is governed by §2244(d)(1)(A), the undersigned finds no basis to apply statutory or equitable tolling to extend the limitations period beyond May 28, 2016, making the Petition untimely by over five years. The undersigned therefore turns to Mr. Ford's argument that he is entitled to a later AEDPA statute of limitations start date under §2244(d)(1)(D).

**D. Ground Two Alone is Timely Under §2244(d)(1)(D)**

The one-year AEDPA statute of limitations begins to run "from the latest of" four dates specified in §2244(d)(1)(A)-(D). 28 U.S.C. §2244(d)(1). Having determined that the statute of limitations has expired under §2244(d)(1)(A), the undersigned turns next to Mr. Ford's argument that the applicable limitations period is governed instead by §2244(d)(1)(D), which provides that "[t]he limitation shall run from . . . the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Specifically, Mr. Ford argues that the Petition, and "at the minimal [sic] the second ground," was timely filed on August 4, 2021, because the AEDPA clock did not start to run until December 22, 2020, when the Fifth District Court of Appeals denied his motion for leave to file a delayed appeal.[13] (ECF Doc. 16, pp. 7-11 (relying on *DiCenzi v. Rose*, 452 F.3d 465 (6th Cir. 2006).)

For the reasons set forth in further detail below, the undersigned finds that Mr. Ford's second ground for relief—an appeal-based claim—is timely under §2244(d)(1)(D) in light of the

[13] Respondent does not address Mr. Ford's §2244(d)(1)(D) statute of limitations argument in its briefing.

Sixth Circuit decision in *Sexton v. Wainwright*, 968 F.3d 607 (6th Cir. 2020), but that his first ground for relief—a sentencing-based claim—is not.

The petitioner in *Sexton* raised both appeal-based and trial-based claims in his federal habeas petition, but the only issue before the court was whether the appeal-based claim alleging that the court of appeals "denied him due process and equal protection by refusing to let him file his appeal late" was timely filed under §2244(d)(1)(D). *Sexton*, 968 F.3d at 609, 613. The Sixth Circuit found that the state court of appeals' denial order was "a necessary factual predicate" for a federal habeas ground for relief based on that order, and therefore found that his petition was timely under §2244(d)(1)(D) because he filed his federal habeas petition within one year of the court of appeals' denial order. *Id.* at 613. The Sixth Circuit remanded *Sexton*'s case to the district court for a determination as to whether he was denied due process or equal protection when the court of appeals declined to allow his late appeal. *Id.* at 613–14.

In Ground Two, Mr. Ford challenges the court of appeals' denial of his motion for leave to file a delayed appeal, and requests that he be provided an opportunity to appeal with appointment of counsel or be released in sixty days and have his sentence and guilty plea vacated. (ECF Doc. 1, pp. 7, 15; ECF Doc. 1-3, pp. 4-5.) Ground Two is an appeal-based claim, similar to that addressed in *Sexton*, which "sprang to life" when the Fifth District Court of Appeals denied his motion for leave to file a delayed appeal on December 22, 2020. *See Sexton*, 968 F.3d at 613. Since Mr. Ford filed his Petition within one-year of that denial, the undersigned finds Ground Two was timely under §2244(d)(1)(D).

In contrast, Mr. Ford argues in Ground One that he received ineffective assistance of counsel when his trial counsel "informed him that he had no rights to appeal after he pled guilt[y] in violation of the 6th and 14th Amendment." (ECF Doc. 1, p. 5.) The factual predicate

for this claim was the advice of counsel given to Mr. Ford in 2015, not the state court of appeals' denial of his motion for leave to file a delayed appeal in 2020.  The Sixth Circuit faced a similar situation in *DiCenzi v. Rose*, 452 F.3d 465, where the petitioner had asserted one "appeal-based claim" challenging the state appellate court decision denying his motion for leave to file a delayed appeal and three "sentencing-based claims" challenging the failure of the trial attorney and trial court to advise him of his appellate rights.  *See* 452 F.3d at 467-68.  Like the Sixth Circuit in *Sexton*, the *DiCenzi* court found the statute of limitations for the appeal-based claim began to run under §2244(d)(1)(D) when the state appeals court denied the petitioner's motion for leave to file a delayed appeal.  *See DiCenzi*, 452 F.3d at 468-69.  As to the sentencing-based claims, on the other hand, the Sixth Circuit found the question under §2244(d)(1)(D) to be "when a duly diligent person in petitioner's circumstances would have discovered [his right to appeal]," with "the petitioner bear[ing] the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim."  *Id.* at 470, 471 (citations omitted) (brackets in original).

Mr. Ford does not separately address the application of §2244(d)(1)(D) to the sentencing-based claim in Ground One and the appeal-based claim in Ground Two, arguing that the date on which the factual predicate for both claims "could have been discovered through the exercise of due diligence" was the date on which "the appellate court refused to allow him to file a delayed appeal on December 22, 2020."  (ECF Doc. 16, p. 8.)  However, as the Sixth Circuit has explained, a petitioner's timely "appeal-based claim is not a permission slip to pursue otherwise untimely trial-based claims."  *Sexton*, 968 F.3d at 613.  Instead, Mr. Ford bears the burden of proving that he could not have discovered the factual predicate for Ground One—his trial

attorney's allegedly erroneous statement in 2015 that he had no right to appeal—prior to August 4, 2020, or one year before he filed the present Petition. *See DiCenzi*, 452 F.3d at 470, 471.

While Mr. Ford has alleged that he did not obtain his transcripts or the advice of an inmate law clerk relevant to Ground One until August 2020 or later (ECF Doc. 1-3, p. 2), he has offered no clear explanation, and certainly no substantiating evidence, to explain why he waited five years to review his transcripts and/or consult an inmate law clerk, or what diligent actions he undertook in the interim. The procedural history reflects that Mr. Ford was able to identify and raise several other legal challenges relating to his convictions prior to August 2020. Further, Mr. Ford's own signature on his February 2015 guilty plea form—which acknowledges that he has a limited right to appeal but must file that appeal within 30 days—calls into question whether a duly diligent person would already have known of his right to appeal when the trial attorney allegedly told him that he did not have such a right in April 2015.

For the reasons set forth above, the undersigned concludes that Mr. Ford has not met his burden to prove that he exercised due diligence as necessary for Ground One to be timely filed under §2244(d)(1)(D).[14] Having already concluded in section II.C., *supra*, that the statute of limitations applicable to Ground One under §2244(d)(1)(A) expired on May 28, 2016, the undersigned recommends that the Court **DISMISS** Ground One as barred by the statute of limitations. However, having concluded that Ground Two is timely filed under §2244(d)(1)(D), the undersigned turns next to the merits of that claim.[15]

[14] It is noted that the due diligence considerations under §2244(d)(1)(D) are distinct from, but also parallel to, the diligence considerations under the equitable tolling standard addressed in Section II.C., *supra*.

[15] As previously indicated, the undersigned finds it unnecessary to address Respondent's alternative procedural default arguments. *See* FN 9 *supra*.

### E. Claim in Ground Two is Non-Cognizable and/or Without Merit

In Ground Two, Mr. Ford asserts he was denied due process and equal protection in violation of the Fourteenth Amendment when the state court of appeals denied his motion for leave to file a delayed appeal and failed to appoint him counsel. (ECF Doc. 1, p. 7; ECF Doc. 1-3, pp. 4-5.) Respondent argues that the Court should deny Ground Two on the merits because it raises a non-cognizable state law claim and/or fails to establish a federal constitutional violation. (ECF Doc. 13, pp. 30-34.) Mr. Ford argues that his claim in Ground Two is cognizable and asserts that the state court of appeals' denial of his motion for leave to file a delayed appeal was an unreasonable application of clearly established federal law. (ECF Doc. 16, pp. 27-33.)

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (citing 28 U.S.C. § 2241); s*ee also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (internal citation omitted)); *see also Duett*, 2020 WL 4933892, at *3 (explaining that a "[v]iolation by a State of its own procedural rules does not necessarily constitute a violation of due process"). Thus, to the extent that Ground Two is premised on a claim that the state courts failed to properly adhere to Ohio Crim.R. 32(B) or other state procedural requirements, the undersigned recommends that the claim be **DENIED** as non-cognizable on federal habeas review.

In Ground Two, Mr. Ford alleges that the state court of appeals violated his federal due process and equal protection rights when it "refus[ed] to correct the trial court's error" in failing to orally notify him of his right to appeal. (ECF Doc. 1-3, p. 5.) Specifically, he argues that the

denial of his motion for a delayed appeal "was contrary to clearly established federal law."[16] (ECF Doc. 16, p. 27.)  In support, he cites to two district court decisions which held that an appellate court decision denying a motion to file a delayed appeal violated "clearly established Supreme Court precedent" when the petitioner had not been notified of his right to appeal.  (ECF Doc. 16, pp. 28-29 (relying on *Wolfe v. Randle*, 267 F. Supp. 2d 743 (S.D. Ohio 2003) and *Thompson v. Wilson*, 523 F. Supp. 2d 626 (N.D. Ohio 2007).)[17]

Having considered Mr. Ford's arguments and the cases he cites in support, the undersigned must nevertheless conclude that he has not met his burden to show that the Fifth District Court of Appeals' denial of his motion for a delayed appeal "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181.

First, the Sixth Circuit recently explained that a "state court's decision to grant or deny a motion to file a delayed appeal is discretionary" and "[n]o Supreme Court precedent holds that there is a right to a delayed appeal in state court . . . ."  *Sexton v. Wainwright*, No. 21-3537, 2022 WL 2165926, at *3 (6th Cir. May 24, 2022).  Although Mr. Ford has cited some older district court decisions which appear to have concluded otherwise, he has not provided this Court with Supreme Court precedent clearly establishing that a state appellate court's denial of a motion to file a delayed appeal may violate federal due process or equal protection rights in violation of the Fourteenth Amendment.

---

[16] In so arguing, Mr. Ford seeks habeas relief under 28 U.S.C. § 2254(d)(1).  He does not argue that the denial of his motion for leave to file a delayed appeal was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, in violation of 28 U.S.C. § 2254(d)(2).

[17] Petitioner's citations to state court decisions are not addressed herein.  Petitioner also cites to *Ruff v. Moore*, 2006 U.S. Dist. LEXIS 54298 (S.D. Ohio 2006), but that court denied the petitioner's request for habeas relief.

Second, the Supreme Court precedent discussed in *Wolfe* and *Thompson* does not apply similarly to the facts in this case. In finding a violation of "clearly established Supreme Court precedent" the courts in *Wolfe* and *Thompson* cited to the Supreme Court's decision in *Peguero v. United States*, 526 U.S. 23 (1999). *See Wolfe*, 267 F. Supp. 2d at 747–49; *Thompson*, 523 F. Supp. 2d at 632. The court in *Peguero* held that "a district court's failure to advise the defendant of his right to appeal does not entitle him to habeas relief if he knew of his right and hence suffered no prejudice from the omission," finding specifically that a petitioner "is not entitled to habeas relief based on a Rule 32(a)(2) violation when he had independent knowledge of his right to appeal and so was not prejudiced by the trial court's decision." *Peguero*, 526 U.S. at 24, 29–30. While the district court in *Peguero* confirmed that the sentencing court failed to advise the petitioner of his right to appeal, it also credited trial counsel's testimony that the petitioner had said he did not want to appeal because he hoped to earn a sentence reduction. *Id.* at 25. In contrast, the *Wolfe* court observed that its case "center[ed] on the complete failure of the court or counsel to inform Petitioner of his right to appeal," 267 F. Supp. 2d at 748, and the *Thompson* court observed that the petitioner had asserted "that he was unaware of his right [to appeal] and was not informed by counsel or the court that he was entitled to appeal," 523 F. Supp. 2d at 632.

Here—parallel to *Peguero* but unlike *Wolfe* and *Thompson*—the petitioner signed a guilty plea form in which he attested that he understood his right to appeal and the time period within which he must appeal (ECF Doc. 13-1, pp. 65-66) and confirmed to the sentencing judge on the record that he had read and understood the form, had discussed the form with his attorney, and that the signature on the form was his (ECF Doc. 13-2, pp. 7-9). Thus, even to the extent that *Peguero* and other Supreme Court precedent cited in *Wolfe* and *Thompson* could have "clearly established" a constitutional violation in the circumstances described in those cases,

such a finding would still not be appropriate in this case, where the evidence shows that Mr. Ford had an independent basis for knowing about his right to appeal. *See Peguero*, 526 U.S. at 29–30 (finding a petitioner "is not entitled to habeas relief" for failure to advise of a right to appeal "when he had independent knowledge of his right to appeal and so was not prejudiced by the trial court's decision"); *see also Duett v. Warden, Noble Corr. Inst.*, No. 1:19-CV-725, 2020 WL 5423886, at *2 (S.D. Ohio Sept. 10, 2020) (finding *Wolfe* and *Thompson* unpersuasive where petitioner acknowledged appellate rights in writing), *report and recommendation adopted,* No. 119CV725WOBMRM, 2020 WL 6083421 (S.D. Ohio Oct. 15, 2020).

The Supreme Court has explained that under AEDPA "a state prisoner seeking a writ of habeas corpus from a federal court 'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102.

Given the highly deferential review afforded state court adjudication of claims on the merits and the record before the Court, the undersigned concludes that Mr. Ford has not met his burden to show that the court of appeals' denial of his motion for leave to file a delayed appeal was contrary to or an unreasonable application of clearly established federal law.

## III. Recommendation

For the reasons set forth above, the undersigned recommends that the Court **DISMISS** Ground One as barred by the statute of limitations and **DENY** Ground Two on the merits.

Dated: May 17, 2024

*/s/ Amanda M. Knapp*

AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).